**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CYNTHIA A. KEREKES, individually | : | 1:14-cv-1665 |
| and in her capacity as Executrix of the Estate | : | |
| of Paul Jerome Brown, Jr., a/k/a Paul J. | : | |
| Brown, Jr., deceased, | : | |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| PRIMERICA, INC. t/a/d/b/a | : | |
| Primerica Life Insurance Company, | : | |
| and FRANCESCA BROWN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**June 10, 2016**

On February 16, 2016, a bench trial was held in the above-captioned matter.

Upon the conclusion of the trial, the Court issued a post-trial briefing schedule.

The parties have now submitted proposed findings of fact, conclusions of law, and

argument. (Docs. 56, 57). Accordingly, this matter is ripe for our review and

disposition. For the reasons that follow, the Court finds for the Defendant,

Francesca Brown, ("Defendant Brown" or "Ms. Brown"), and shall enter judgment

in her favor.

## I.   FACTS

Paul J. Brown, Jr., ("Mr. Brown"), was married to Francesca Brown for almost 17 years, from May 1987 to April 2004. (Doc. 51, Joint Statement of Facts, ¶ 1). They had one son together, in 1989. (Trial Transcript, pp. 64-65). Paul and Francesca Brown divorced by decree and order of the Court of Common Pleas of Montgomery County on April 15, 2004, which incorporated an equitable distribution agreement dated March 31, 2004. (JSOF, ¶ 9). Mr. Brown married Plaintiff Cynthia Kerekes, ("Ms. Kerekes"), on August 5, 2005. (*Id.*, ¶ 10). The bitter dispute at the heart of this lawsuit concerns which of Mr. Brown's wives, his ex-wife Ms. Brown or his wife at the time of his death, Ms. Kerekes, has a right to the proceeds of his Primerica life insurance policy.

In February 1988, Paul and Francesca Brown submitted an application for life insurance to Massachusetts Indemnity and Life Insurance Company, ("MILICO"). (*Id.*, ¶ 2). They sought life insurance on Mr. Brown's life in the amount of $183,000 and an insurance rider providing coverage for his spouse at the time, Ms. Brown. (*Id.*, ¶ 3). On this application form, Mr. Brown named Ms. Brown as the primary beneficiary; he named his mother, Antoinette Brown, as the contingent beneficiary. (*Id.*, ¶ 4).[1] MILICO issued the policy to Mr. Brown in the amount sought, $183,000, and issued a spouse term insurance rider insuring Ms.

---

[1] The contingent beneficiary of the policy, Antoinette Brown, died in 2001. (JSOF, ¶ 8).

Brown's life in the amount of $20,000. (*Id.*, ¶ 5). The 1988 MILICO policy was

numbered 0412796493 and had an expiration date of April 15, 2049. (*Id.*, ¶ 6).

MILICO subsequently became known as Primerica Life Insurance Company,

("Primerica"). (*Id.*, ¶ 7).

In February of 2008, after the Browns had divorced and after Mr. Brown had

married Ms. Kerekes, Primerica sent Mr. Brown a letter regarding "Premium

Notification and Coverage Selection Options." (*Id.*, ¶ 11). On March 17, 2008, Mr.

Brown completed and signed a Coverage Election Form and Application

Agreement. (Trial Ex. D-4). As will be detailed hereafter, Mr. Brown's notations in

this Coverage Election Form and Application Agreement led to the instant dispute

over the rightful beneficiary of his life insurance policy proceeds.

On the referenced form, Mr. Brown chose coverage that provided a fixed

premium for the next 20 years, and he also opted to delete the spouse rider

insurance that had covered the life of Ms. Brown. (*Id.*, p. 1). Ms. Kerekes does not

dispute these facts. On the same form but on a separate page that contained

additional terms and a signature line, Mr. Brown wrote "Delete Spouse" in the

section titled "Additional Comments."  (*Id.*, p. 2). Further, at the top of this page,

which Mr. Brown signed and dated, the text of the form reads in part, " . . . if a

new policy is issued, the beneficiary or beneficiaries and method of settlement

shall be the same as under the original policy." (*Id.*). Ms. Kerekes does not dispute

any of these facts as to the content of the Coverage Election Form and Application Agreement. Ms. Kerekes disputes only how the comment "Delete Spouse" should be interpreted: she argues that with this notation, Mr. Brown also intended to delete Ms. Brown as the beneficiary of the policy.

In a letter to Mr. Brown dated April 25, 2008, Primerica acknowledged receipt of a "Policy Change Application" from him. (JSOF, ¶ 13). On May 9, 2008, Primerica mailed Mr. Brown an insurance policy, ("the 2008 policy"), bearing the same original policy number, 0412796493, and insuring his life in the same amount of $183,000, with a date of issue of May 17, 2008, a "policy date" of April 15, 2008, and an expiration date of April 15, 2054. (*Id.*, ¶¶ 14-15).

Notably, both the original 1988 policy and the 2008 policy (whether it is considered a "reissuance" of the 1988 policy or a new policy) state that a change of beneficiary can only be effected by "Notice" to Primerica, signed by the insured, Mr. Brown. (Ex. D-2, p. 13; Ex. D-5, pp. 32-33).

The 2008 policy lapsed in 2011 due to Mr. Brown's failure to pay the premiums. (JSOF, ¶ 16). Mr. Brown applied to reinstate the policy, and the policy was reinstated with the same policy number, with a date of issue of March 1, 2012, a "policy date" of April 15, 2008, and an expiration date of April 15, 2054. (*Id.*, ¶ 18).

At trial, Kevin Goodman, the Primerica insurance agent who sold the 1988 policy to Mr. Brown, (Transc., p. 31), testified that it was his view that Mr. Brown never changed the beneficiary of his policy. He testified that there were two methods by which an insured could change a beneficiary, and that to his knowledge, Mr. Brown did not follow either method or otherwise change his beneficiary. (*Id.*, p. 42). With regard to the "Delete Spouse" notation, Mr. Goodman testified that *he* was the one who advised Mr. Brown to make the notation so that Primerica would be able to better match up the first and second page of the 2008 Coverage Election Form and Application Agreement—not to communicate to Primerica that Mr. Brown wished to change his beneficiary at that time. (*Id.*, pp. 42-43). Ms. Kerekes offered no evidence to counter this testimony. Mr. Goodman's testimony further revealed that Mr. Brown himself was once also a licensed insurance agent who had sold Primerica life insurance products for approximately two years. (*Id.*, pp. 32-33). In order to be a licensed insurance agent, Mr. Brown had to take and pass the state insurance exam. Further, in order to sell Primerica products, Mr. Goodman testified that Mr. Brown had to learn about those products. (*Id.*, pp. 33-34).

Mr. Brown died in April 2014. (JSOF, ¶ 19). He was a resident of Pennsylvania at the time of his death. Mr. Brown's Last Will and Testament,

executed October 31, 2013, names Ms. Kerekes as the executrix and beneficiary of his estate. (*Id.*, ¶ 20).

Ms. Brown also submitted into evidence a letter from Primerica to Mr. Goodman following Mr. Brown's death, which states that Ms. Brown is the beneficiary of the policy. (Ex. D-9). Mr. Goodman testified that this letter indicates that as far as Primerica's records were concerned, Defendant Brown was the beneficiary of the policy. (Transc., p. 47).

## II.   DISCUSSION

In our September 24, 2015 Memorandum & Order, (Doc. 40), we granted summary judgment to Primerica on its claim for interpleader relief.[2] We are now at the second stage of an interpleader action, in which we must decide which claimant, Ms. Kerekes or Ms. Brown, has rights to the interpleaded funds. *See Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). If the dispute reaches the trial stage, as it is has in the matter *sub judice*, "each claimant has the burden of establishing the right to the fund or property by a preponderance of the evidence." 7 CHARLES WRIGHT, ARTHUR MILLER, ET AL., 7 FEDERAL PRACTICE & PROCEDURE § 1714 (3rd ed.)).

The fundamental dispute before us concerns whether Mr. Brown ever removed Ms. Brown as the beneficiary of his Primerica life insurance policy, or

---

[2] We also granted summary judgment in favor of Primerica on Plaintiff's breach of contract and statutory bad faith claims. (Doc. 40).

whether her designation was otherwise rendered ineffective by virtue of the later

2008 iteration of the policy, the lapse of the policy in 2011, or provisions under

Pennsylvania law regarding ex-spouses. We shall begin with the question of

whether Pennsylvania law renders Ms. Brown's beneficiary designation

ineffective, as that would in itself resolve the case in favor of Ms. Kerekes, insofar

as she is the executor and beneficiary of the estate of Paul Brown.[3]

Ms. Kerekes argues that 20 Pa.C.S.A. § 6111.2 invalidates Ms. Brown's

beneficiary designation due to the fact that Mr. and Mrs. Brown were divorced at

the time of his death. Section 6111.2 reads, in relevant part:

> (a) Applicability.—This section is applicable if an individual:
>> (1) is domiciled in this Commonwealth;
>> (2) designates the individual's spouse as beneficiary of the individual's life insurance policy, annuity contract, pension or profit-sharing plan or other contractual arrangement providing for payments to the spouse; and
>> (3) either:
>>> (i) at the time of the individual's death is divorced from the spouse; or
>>> (ii) dies during the course of divorce proceedings . . . .
>
> (b) General rule.—Any designation described in subsection (a)(2) in favor of the individual's spouse or former spouse that was revocable by the individual at the individual's death shall become ineffective for all purposes and shall be construed as if the spouse or former spouse had predeceased the individual, unless it appears the designation was intended to survive the divorce based on . . .

---

[3] We have already determined at the summary judgment stage of this case that Ms. Kerekes is not the direct beneficiary of Mr. Brown's Primerica policy in her individual capacity. (Doc. 40). Were we to find in her favor here, she would succeed to the policy proceeds as a beneficiary of Mr. Brown's estate.

(4) a designation of a former spouse as a beneficiary after the divorce decree has been issued.

Ms. Kerekes does not dispute that Ms. Brown was named as the primary beneficiary in the 1988 policy.[4] If Mr. Brown's designation of Ms. Brown at that time controls, § 6111.2 does not invalidate this designation, as Pennsylvania courts have held that this law cannot be applied retroactively, insofar as § 6111.2 cannot control beneficiary designations made prior to its enactment in 1992. *Parsonese v. Midland National Ins. Co.*, 706 A.2d 814 (Pa. 1998) (holding that retroactive application of this statute unconstitutionally impairs obligation of contracts). Ms. Brown's designation occurred in 1988, which of course predates 1992. However, Ms. Kerekes also argues that the 2008 policy in fact constituted a new contract or policy, not a reissuance of the 1988 policy with updated coverage, as Ms. Brown contends. A 2008 policy would post-date the enactment of § 6111.2, thus appearing to obviate the retroactivity issue. Regardless, Ms. Brown argues that § 6111.2 still does not invalidate her designation because the 2008 policy specifically states that if a new policy is issued, the beneficiary shall remain the same as under the original policy. (Ex. D-4, p.2). According to her view then, even if Ms. Kerekes is correct that the 2008 version of the policy should be construed as a new policy or a new contract, then at that time Ms. Brown was the *former* spouse

---

[4] There also appears to be no dispute that that this was a policy with a revocable beneficiary designation.

of Mr. Brown, and his renewed designation of her as the beneficiary by his signing of the 2008 contract constituted a "designation [that] was intended to survive the divorce based on . . . a designation of a former spouse as a beneficiary after the divorce decree has been issued," under § 6111.2(b)(4).

Putting aside the "Delete Spouse" handwritten notation for a moment, we agree with Ms. Brown's interpretation of § 6111.2 as applied to her in this case. By signing the 2008 policy that contained the clear provision that the beneficiary would remain the same as under the original policy, Mr. Brown in effect affirmatively renewed his designation of Ms. Brown as his beneficiary following their divorce in 2004. *See In re Estate of Hoffman*, 54 A.3d 903, 907 (Pa. Super. Ct. 2012) (finding that § 6111.2 requires an affirmative indication in contracts between the parties that the beneficiary designation shall survive the divorce). Accordingly, if we find the "Delete Spouse" notation to not constitute a removal or change of beneficiary, then Ms. Brown was the beneficiary under the 2008 policy, as well, and regardless of whether her 1988 or 2008 designation controls, § 6111.2 does not preclude Ms. Brown from recovering the policy proceeds at issue.

Following this logic, then, we must decide whether there is any evidence Mr. Brown removed, or intended to remove, Ms. Brown as his beneficiary under the policy. Ms. Kerekes has offered no evidence in support of her argument that Mr. Brown did so, other than the singular assertion that the phrase "Delete Spouse" in

the "Additional Comments" section of the 2008 Coverage Election Form and Application Agreement showed Mr. Brown's intent to remove Ms. Brown as the beneficiary. Ms. Kerekes posits that this handwritten notation is sufficient to create an ambiguity in the 2008 policy as to whether his intention was to remove Ms. Brown as the beneficiary.[5]

As aforestated, Ms. Kerekes's position has no evidentiary support other than the notation itself. While we heard testimony that Mr. Brown *considered* changing his beneficiary in January of 2008, (Transc., p. 39), there is no evidence he ever intended or actually made the decision to do so.

Further and as noted, on the very same page of the Coverage Election Form and Application Agreement, it is clearly and unambiguously stated that the beneficiary shall remain the same as under the original policy. Mr. Brown, as an experienced former Primerica life insurance salesman himself, must surely have read and understood such language. This provision, combined with his education and experience in the field, leads this Court to conclude that Mr. Brown did not intend his "Delete Spouse" notation to refer to Ms. Brown's beneficiary status, and his actions did not rise to the level of creating an ambiguity in the contract on this issue.

---

[5] The Court agrees with Ms. Kerekes that the 2008 Coverage Election Form and Application Agreement became a part of the 2008 insurance policy contract. Ms. Brown does not appear to dispute this.

Regardless, even if we were to conclude that there was some ambiguity with regard to Mr. Brown's intent when he wrote "Delete Spouse" on the Coverage Election Form and Application Agreement, Ms. Kerekes's evidence falls far short of the standard an insured is required to meet under the law when he fails to strictly follow an insurance policy's terms for changing the beneficiary. In Pennsylvania, courts follow the equitable doctrine of "substantial compliance," whereby they will "give effect to an insured's intention to change the beneficiary on an insurance policy where, even in the absence of strict compliance with the policy provisions, the insured has made *every reasonable effort* under the circumstances to comply with those provisions." *Cipriani v. Sun Life Ins. Co. of America*, 757 F.2d 78, 81 (3d Cir. 1985) (emphasis added) (internal citation omitted). The substantial compliance standard is a very high bar for an insured to meet. "The essential inquiry is whether . . . [it has been] . . . shown that the insured intended to execute a change to such an extent that effect should be given it." *Id.* (quoting *Prudential Ins. Co. of America v. Bannister*, 448 F.Supp. 807 (W.D. Pa. 1978)).  In order to apply this equitable exception to strict compliance, courts require a "positive, unequivocal act toward making the change [of beneficiary]," and they have found a "mere declaration of intent to change the beneficiary" insufficient. *Manufacturers Life Ins. Co. v. Dougherty*, 986 F. Supp. 928 (E.D. Pa. 1997) (internal quotations and citations omitted).

In the instant matter, Mr. Goodman's testimony showed that even if he had wished to do so, Mr. Brown did not strictly comply with Primerica's requirements for changing a beneficiary. As aforementioned, Mr. Goodman testified there were two methods by which an insured could notify Primerica that he or she wished to change a beneficiary, and that Mr. Brown complied with neither of them. Ms. Kerekes did not dispute this. As a result, Mr. Goodman testified that to his knowledge, Mr. Brown never changed his beneficiary. Thus, there can no question that Mr. Brown failed to strictly comply with Primerica's change of beneficiary procedure.

Plaintiff has offered no evidence that Mr. Brown ever made a "positive unequivocal act" toward changing his beneficiary or revoking Ms. Brown's status as his policy's beneficiary. Indeed, Ms. Kerekes's whole case is built on trying to create an equivocation over Mr. Brown's intent behind the "Delete Spouse" notation. Further, Ms. Brown has effectively disputed this contention with Mr. Goodman's undisputed testimony that *he* was the one who advised Mr. Brown to make this notation, so that it was clear to Primerica that the second page of the Coverage Election Form corresponded to the first page of the form on which Mr. Brown removed Ms. Brown's spouse rider coverage. We find Mr. Goodman to be a credible witness with regard to explaining the reason for Mr. Brown's handwritten notation. It is entirely logical that Mr. Brown no longer wanted to pay

for insurance coverage on his ex-wife Ms. Brown's life, hence the "Delete Spouse" notation. However, there has been nothing presented by Ms. Kerekes to convince us that Mr. Brown desired to change his beneficiary, or indeed that he even attempted to do so.

As someone with experience in the insurance sales industry himself, and with Primerica life insurance policies in particular, Mr. Brown presumably knew how to change his beneficiary. His sophistication in this field further underscores his failure to make every reasonable effort to comply with Primerica's change of beneficiary requirements. Notably, Ms. Kerekes is not referenced at all on the policy form, and it strains credulity to find that a person with Mr. Brown's training and background would intend to remove a beneficiary and then fail to insert a replacement for her. And as Ms. Brown points out in her brief, Mr. Brown could have at the very least written "Delete Francesca Brown as beneficiary" or "Delete all prior beneficiary designations" if his intention was to remove Ms. Brown as his beneficiary. But he failed to do so—because the evidence is now clear that he never ultimately intended to remove Ms. Brown as the beneficiary.

Accordingly, for all of the above reasons, we shall enter judgment in favor of Ms. Brown.[6][7]

---

[6] Ms. Kerekes also revisits her argument from the summary judgment stage that the property settlement agreement entered into by Mr. and Mrs. Brown as part of their divorce somehow terminates or waives her beneficiary status to the life insurance policy at issue. Given that we already discussed and decided this issue at the summary judgment stage, the law of the case

## III.   CONCLUSION

Based upon the parties' submissions at the early stages of this case, we confess that the proper resolution of the dispute was less than clear to us. One of the salutary effects of presiding over a bench trial is that it allows us to put in stark relief the realities of the facts of a case. So it was in this case. Having heard all of the testimony and the exhibits in this case, we now have no trouble concluding that judgment must be entered in Ms. Brown's favor.

An appropriate Order shall issue.[8]

---

doctrine precludes our need to reconsider this argument following trial. *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003). Further, we note that Ms. Kerekes has not argued that there is any new evidence in the record that would require our reconsideration of the issue. *See id.* (noting an exception to the law of the case doctrine where a party offers material new evidence). To the extent Ms. Kerekes now specifically argues that the failure of the property settlement agreement to explicitly state Ms. Brown was to remain the policy beneficiary renders her beneficiary status ineffective under § 6111.2, we disagree and refer the parties to our earlier discussion of § 6111.2 in this Memorandum. To reiterate, the 2008 Policy (following the 2004 divorce) effectively renewed and reaffirmed Mr. Brown's designation of Ms. Brown as the policy beneficiary.

[7]Ms. Kerekes makes a cursory argument that the lapse of the policy in 2011 has some relevance to the beneficiary issue. Ms. Kerekes cites no case law for this proposition. Further, Mr. Goodman testified that a policy lapse in itself does not have an effect on a beneficiary designation. (Transc., p. 45). He further stated that when a policy is reinstated following a lapse, the beneficiary designation is the same as it was before the lapse. (*Id.*). Moreover, nothing in the policy terms provides that when a policy lapses and is reinstated, all beneficiary designations are revoked. (Exs. D-2, D-5). We thus find Ms. Kerekes's argument in this regard to be baseless.

[8] In her brief, Ms. Brown also requests to be granted her costs of suit; however, she offers no argument or case law in support of this request. Therefore, we shall deny this request.